UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America   :
                           :
            v.             :        File No. 2:03-CR-58
                           :
Jemol Nesbitt              :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 65 and 68)

Jemol Nesbitt, a federal inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Nesbitt was convicted in 2004 of conspiracy to distribute cocaine with intent to distribute. He now claims that his attorney was ineffective. Specifically, Nesbitt claims that counsel did not properly advise him about his potential sentence, failed to object to the sentence, and failed to file a timely notice of appeal. Nesbitt has also moved to amend his initial motion to allege that his plea was not knowing and voluntary, and that the Court did not adequately explain the impact of 21 U.S.C. § 851 on his sentence. For the reasons set forth below, the motion to amend is GRANTED, and I recommend that Nesbitt's § 2255 motion be DENIED.

<u>Factual Background</u>

The following facts are undisputed. In 2002,

Nesbitt and a co-conspirator began obtaining crack
cocaine in New York for distribution in the Barre,
Vermont area.  On March 26, 2003, law enforcement
officials executed a search warrant on the Barre
residence from which Nesbitt had allegedly been selling
the drugs.  Nesbitt was present during the search, and
officers found approximately two ounces of crack cocaine.

On May 8, 2003, a federal grand jury returned an
indictment against Nesbitt charging him with one count of
distribution of heroin and one count of distribution of
cocaine base in violation of 21 U.S.C. § 841(a)(1).  On
May 21, 2003, Nesbitt pleaded not guilty to the
indictment.  On July 31, 2003, the government filed an
information against Nesbitt charging him with conspiracy
to distribute more than five grams of cocaine base, in
violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).  The
government also filed a Section 851 information notifying
the Court that Nesbitt had been convicted in 1996 of a
felony drug violation.  The government's filing of the
Section 851 information doubled the statutory mandatory
minimum sentence from five years to ten years, and
increased the statutory maximum sentence from 40 years to

life imprisonment.

Also on July 31, 2003, and pursuant to a written plea agreement, Nesbitt pleaded guilty to the information.  During the plea hearing, the Court reviewed with Nesbitt the consequences of his plea, including the maximum and minimum sentences and the fact that the Section 851 information accused him of a prior felony drug conviction.  (Paper 74, Ex. 2 at 7-8).  Nesbitt acknowledged the prior conviction, and expressly confirmed his understanding that he faced a maximum sentence of life imprisonment.  Id.

The Presentence Report ("PSR") assigned to Nesbitt a base offense level of 30 because his offense involved between 35 and 50 grams of cocaine base.  U.S.S.G. § 2D1.1.  Since Nesbitt qualified as a career offender, and given the statutory maximum of life imprisonment, his base offense level was increased to 37.  The resulting guideline range was 262-327 months in prison.

At Nesbitt's first sentencing hearing, the Court spoke to counsel in chambers about the impact of the Section 851 filing.

COURT: This is up to you.  This is – is a clear
question up to you.  But, the difference 15 and

3

a half to 16 years versus 22, and –

GOVERNMENT: With the 851.

COURT: Right.  That's a lot of time.  And I
wonder if there's any – I will put this on the
record – any kind of resolution to the extent
that this would seem a more appropriate sentence
than 22?

GOVERNMENT: I would have a difficult time doing
that.  I had a difficult – I mean, it can be
difficult not to file two 851s in a situation
like this.

COURT: The only reason I bring it up is,
[Nesbitt's attorney] Mr. Carleton has got two
good points: Number one, the upbringing, and
number two, is he a small player.  And I don't
know the answer to the question.  I assume that
he is a small-level player, in which case you
are taking a small-level player and giving him
22 years, and that's the issue.

(Paper 72, Ex. 8 at 17-18).  After a brief recess, the

government agreed to review their Section 851 filing and

the Court postponed the sentencing to a later date.

     The parties subsequently entered into an addendum to

their plea agreement.  The addendum stated that Nesbitt

was a career offender, that after a three-level reduction

for acceptance of responsibility his total offense level

was 31, and that the resulting guideline range was 188-

235 months.  The agreement did not include admitting to

the Section 851 information.  With respect to Nesbitt's

ultimate sentence the parties agreed, pursuant to Rule 11(c)(1)(C), that Nesbitt would receive a sentence of 216 months, or 18 years.  The parties further waived their rights to seek a departure from the stipulated guideline range.

At the second sentencing hearing, the Court addressed the impact of the addendum.

> COURT: Now, there's a subsequent addendum to the plea agreement, which effectively eliminates the rule – the 851 information, and you entered into a binding plea, and specifically, the terms of the plea agreement are set forth in paragraph eight, that is you are still a career offender although the total offense level goes to 31, after going to first 34.  Sentencing range is 188 to 235 months.  And the parties stipulate in a binding plea agreement that the sentence is 216 months, which is 18 years in prison.
>
> NESBITT: Yes.
>
> COURT: Do you understand that?
>
> NESBITT: Yes.
>
> COURT: And all other respects, the plea agreement is consistent with the last plea agreement.  Have you had a chance to review the terms of this plea agreement with Mr. Carleton?
>
> NESBITT: Yes.
>
> COURT: And he has explained to you the contents of this agreement?
>
> NESBITT: Yes.

COURT: And do you wish to enter into an agreement?

NESBITT: Yes.

COURT: Is [sic] the terms of that agreement acceptable to you?

NESBITT: Yes.

COURT: You understand that if the Court accepts the plea agreement at this point, the Court would impose a sentence of 216 months.  If the Court rejects the plea agreement, you can go back on a not guilty plea?  You understand that?

NESBITT: Yes.

COURT: And is it your request that the Court accept this plea agreement?

NESBITT: Yes.

COURT: And are you doing that knowingly and voluntarily?

NESBITT: Yes.

(Paper 74, Ex. 9 at 5-6).  The Court subsequently accepted the plea agreement and sentenced Nesbitt to 216 months in prison, to be followed by four years of supervised release.  Id. at 8, 10.  The Court also informed Nesbitt of his right to an appeal.  Id. at 11-12.

The Court entered judgment on March 4, 2004, and pursuant to Fed. R. App. P. 4, any notice of appeal was due on or before March 16, 2004.  No such notice was

6

filed.  Nesbitt now claims that he requested an appeal,
but that his attorney, Ian Carleton, Esq., failed to file
it before the deadline.

Attorney Carleton has submitted a detailed affidavit
setting forth his communications with Nesbitt on this
issue.  Carleton first states that he spoke with Nesbitt
both before and after the sentencing hearing.  In their
conversation immediately post-sentencing, Nesbitt
allegedly indicated to Carleton "that he was sad to be
receiving such a large sentence, but at no time did he
inform me that he wished to appeal his sentence."  (Paper
76-1 at 2).

On or about April 16, 2004, Carleton received a
letter from Nesbitt dated April 13, 2004, inquiring about
the status of his appeal.  Carleton immediately wrote
back and explained that he had not filed a notice of
appeal because "you never indicated any intent to appeal
your conviction or sentence.  We never discussed moving
forward with an appeal in your case, in spite of the fact
that the judge specifically recited your appeal rights
during your sentencing hearing."  (Paper 76-3).  In
response, Nesbitt wrote to Carleton that he was "very

7

surprised and upset that you conveniently have no recollection of my desire to appeal my sentence, however, that changes nothing.  I still want to appeal.  I respectfully request that you petition the Court for an extention [sic] to Rule 4(b) F.R.C.P. due to this misunderstanding."  (Paper 76-4).

Accordingly, on May 13, 2004, Carleton filed a motion for extension of time and notice of appeal.  On May 18, 2004, the Court granted the motion and ordered that the notice of appeal be filed.  On May 19, 2004, the government moved the Court to reconsider its order, arguing that the motion for extension of time was not timely filed.  In opposition, Carleton argued that the reason for the delay was Nesbitt's incarceration in Pennsylvania, and that Nesbitt's initial letter inquiring about the status of his appeal was dated April 13, 2004, which was within the 30-day window for requesting an extension of time.

The Court granted the government's motion and vacated its prior order.  The Court did not, however, vacate the notice of appeal.  On June 30, 2004, Nesbitt filed a notice of appeal *pro se*, appealing the Court's

8

denial of his motion for extension of time.  The Second
Circuit dismissed both appeals as untimely.

Discussion

I.  Legal Standard

To prevail in a habeas corpus motion under § 2255, a
defendant must demonstrate (1) that the sentence was
imposed in violation of the Constitution or laws of the
United States, (2) that the court was without
jurisdiction to impose such sentence, (3) that the
sentence was in excess of the maximum authorized by law,
or (4) that the sentence is otherwise subject to
collateral attack.  28 U.S.C. § 2255.  If an issue is not
raised on direct appeal, a § 2255 motion is procedurally
barred unless it is based on constitutional or
jurisdictional claims or would result in a "complete
miscarriage of justice."  Johnson v. United States, 313
F.3d 815, 817 (2d Cir. 2002).  In addition, a defendant
may not assert a claim in a § 2255 motion that he or she
failed to raise on direct appeal unless the defendant
shows cause for the omission and prejudice resulting
therefrom, or actual innocence.  See Bousley v. United
States, 523 U.S. 614, 622 (1998); Campino v. United

States, 968 F.2d 187, 190-91 (2d Cir. 1992).  One exception to this rule is that a claim for ineffective assistance of counsel may be brought regardless of whether it was raised on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

II.   Ineffective Assistance of Counsel

"[T]he proper standard for attorney performance is that of reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984).  The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. See Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show that counsel's representation fell below an objective

standard of reasonableness.  More specifically, the
petitioner must show that "counsel made errors so serious
that counsel was not functioning as the counsel
guaranteed by the Sixth Amendment and the deficient
performance so undermined the proper functioning of the
adversary process that the trial cannot be relied upon as
having produced a just result." Strickland, 466 U.S. at
687; see also United States v. DiTommaso, 817 F.2d 201,
215 (2d Cir. 1987).  In conducting the ineffective
assistance inquiry, a court must maintain a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance. See
Strickland, 466 U.S. at 689.  The court should recognize
that counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in
the exercise of reasonable professional judgment. See
id. at 690.  When evaluating counsel's performance, the
court is to look to "an objective standard of
reasonableness . . . under prevailing professional norms"
and apply this standard in light of all the circumstances
in the case. Id. at 688, 690.

To satisfy the prejudice prong, the petitioner must

11

"affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding might have been different." Id. at 693-94. If both of these elements are satisfied, a petitioner can demonstrate that his counsel's representation "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.

A.  Evidentiary Hearing

A preliminary issue before the Court is whether, particularly in light of the conflicts between Nesbitt's claims and Carleton's affidavit, the Court must hold an evidentiary hearing.  Section 2255 requires a district court to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255. As the Supreme Court has explained, however, § 2255 recognizes "that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." Machibroda v. United States, 368 U.S. 487, 495 (1962). "Moreover, Second Circuit precedent permits district courts to take a 'middle road' of deciding factual issues

12

on the basis of written submissions." <u>Jang v. United States</u>, 2004 WL 470031, at *3 (E.D.N.Y. Jan. 23, 2004) (quoting <u>Pham v. United States</u>, 317 F.3d 178, 184 (2d Cir. 2003)).

In <u>Chang v. United States</u>, 250 F.3d 79, 86 (2d Cir. 2001), the Second Circuit held that is within the district court's discretion to forego an evidentiary hearing when the defendant's assertions are countered by his former attorney's detailed affidavit.  In this case, Carleton has offered such an affidavit, and has attached exhibits that clearly set forth both his own recollection of events and Nesbitt's written accounts of those same events.  Consequently, a testimonial hearing "would add little or nothing to the written submissions." <u>Chang</u>, 250 F.3d at 86.  The Court may therefore resolve Nesbitt's § 2255 motion without holding an evidentiary hearing.  <u>See</u>, <u>e.g.</u>, <u>Cruz v. United States</u>, 2007 WL 541698, at *3 (S.D.N.Y. Feb. 20, 2007); <u>Lopez v. United States</u>, 2006 WL 2020389, at *2-*3 (S.D.N.Y. July 12, 2006).

B.  Failure to File Notice of Appeal

Nesbitt's first claim is that he asked Carleton to

13

file an appeal, but Carleton failed to do so.  When trial
counsel fails to file an appeal requested by the
defendant, such a failure constitutes a potential ground
for habeas relief.  Garcia v. United States, 278 F.3d
134, 137 (2d Cir. 2002) (citing Roe v. Flores-Ortega, 528
U.S. 470, 484 (2000)).  Applying the two-prong Strickland
standard, the Supreme Court has determined that "a lawyer
who disregards specific instructions from the defendant
to file a notice of appeal acts in a manner that is
professionally unreasonable." Flores-Ortega, 528 U.S. at
477; see also Garcia, 278 F.3d at 137.  As to the second
Strickland prong, a "petitioner has also shown prejudice
when he shows that he would have taken an appeal, such as
when he asked his counsel to file the appeal; he need not
make a showing of the merits of the appeal." Garcia, 278
F.3d at 137 (citing Flores-Ortega, 528 U.S. at 484); see
also McHale v. United States, 175 F.3d 115, 119 (2d Cir.
1999) ("[I]t is clear that the petitioner need not
demonstrate that, but for the ineffectiveness of counsel,
such an appeal would have succeeded or even would have
merit.").

     Here, there is a factual question of whether Nesbitt

actually requested an appeal.  In his sworn affidavit,
Carleton states that he spoke with Nesbitt both before
and after sentencing.  "[A]t no time did he inform me
that he wished to appeal his sentence." (Paper 76-1 at
2).  Carleton further attests that if Nesbitt had asked
him to file an appeal, he would have done so "by its due
date, March 16, 2004." Id.

The "first indication" Carleton received of
Nesbitt's desire for an appeal was in Nesbitt's letter,
dated April 13, 2004, inquiring about the status of the
appeal.  Id.  When Carleton responded that Nesbitt had
not previously indicated any intent to appeal, Nesbitt
accused him of "conveniently" forgetting a previous
conversation.  Id.  While Nesbitt's appeal was pending at
the Second Circuit, he and Carleton continued to exchange
letters.  Among these was a letter dated August 23, 2004,
in which Nesbitt claimed that he had informed Carleton of
his wish to file an appeal on the day he was sentenced.

> On the date of Sentencing I expressed my
> dissatisfaction with the proceedings and I
> specifically told you that we needed to do
> something about this.  As I sat in the bullpen I
> waited for you to come back there so I could
> discuss with you my dissatisfaction and my
> desire to appeal the judge's decision to assess
> me at level 30, instead of level twenty six

15

(26), for drug quantity.  That should have put
you on point that I wanted to file a Notice of
Appeal.

(Paper 76-8 at 1).  Nesbitt further explained that after

his sentencing he was in transit much of the next few

weeks, and was not able to communicate with Carleton

again until his letter of April 13, 2004.  Id.

Carleton responded in a letter dated August 31,

2004.

First, the account you have provided in your
letter of the events and conversations between
us that allegedly took place the day of your
sentencing is completely at odds with reality.
On the day of your sentencing, you never once
expressed dissatisfaction with the proceedings,
and you certainly never "specifically told [me]
that we needed to do something about this."
Also, contrary to your claim, I did in fact come
back to the visiting area to talk with you
(there are no bullpens in the Burlington federal
building, which you also incorrectly represent).
In our conversation, you expressed sadness at
the fact that you were about to embark on a
lengthy term of imprisonment, but you never said
any of the things you are now claiming to have
said concerning a desire to appeal.

(Paper 76-9 at 1).  The "next and final" letter Carleton

received from Nesbitt was dated April 18, 2005.  (Paper

76-10).  In this letter, Nesbitt asked for Carleton's

help in determining whether Supreme Court cases affecting

the application of the federal sentencing guidelines

16

might be of some benefit to him.  Nesbitt also wrote:

> From many other inmates here, I can now see that
> you did a good job with really nothing to work
> with, I do hope you can understand my feelings
> since even though (18) years is alot [sic], it
> was the best deal we could do . . . .  I am sure
> that you can see my point of view, that if I
> could "knock down" this sentence to (anywhere
> between 12-15 years), it would be a major
> victory, but I do not wish to risk my sentence,
> and return from court with more time, of 20-30
> years.

Id. at 1-2 (parentheticals in original).

Nesbitt further claims that Carleton failed to file
the motion for extension of time in a timely manner.
Pursuant to Fed. R. App. P. 4(b)(1)(A), this motion would
have been due no later than April 15, 2004.  However,
according to Carleton's affidavit, Nesbitt first
communicated his desire for an appeal in correspondence
that arrived in Vermont on or about April 16, 2004.
After Carleton had an opportunity to confirm that his
client wished to appeal, he filed the motion for
extension of time.  Upon doing this, however, Carleton
again sent Nesbitt a letter reiterating his firm belief
that Nesbitt never asked for an appeal prior to mid-
April, 2004.  "In fact, I am positive that you never
expressed such an interest, for if you had I would not

17

have forgotten it." (Paper 76-5 at 1). Carleton also
informed Nesbitt that "[a]s I reflect on your sentence, I
can think of no basis for appeal. However, if you do
have some grounds for appeal in mind, please let me know
what they are." Id. at 2. When the case moved to the
Second Circuit, Carleton filed an Anders brief and a
motion to be relieved as appellate counsel.[1]

On his § 2255 motion, Nesbitt bears the burden of
proof by a preponderance of the evidence. See Chang, 250
F.3d at 85; Triana v. United States, 205 F.3d 36, 40 (2d
Cir. 2000). Having reviewed the parties' submissions, I
recommend the Court find that Nesbitt has not met his
burden. In his most detailed account of the moments
after his sentencing hearing, Nesbitt submits that he
made a vague statement to the effect that "we need to do
something about this." (Paper 76-8 at 1). He also
describes sitting in a "bullpen" that does not exist in
the federal court. Id. In contrast, Carleton has a
specific recollection of the place and content of his
conversations with Nesbitt after the sentencing, and is

_____

[1]  If appellate counsel believes that an appeal is meritless but has been
asked by his client to file an appeal, he must inform the court of his
belief, seek permission to withdraw, and file a brief "referring to
anything in the record that might arguably support the appeal." See
Anders v. State of California, 386 U.S. 738, 744 (1967).

18

quite firm in his contention that Nesbitt never asked him to file an appeal.

In his reply memorandum, Nesbitt does not directly counter Carleton's account of the events in question, and has offered no sworn statement on his own behalf. Accordingly, the stronger evidence demonstrates that Nesbitt did not ask for an appeal until after the appeal deadline had passed.  Once Carleton was informed of his client's desire to appeal, he moved diligently to request an extension of time.  This request was denied, and the appeal was deemed untimely.  Nonetheless, based upon the current record and counsel's detailed affidavit, the Court should conclude that Carleton was not ineffective for failure to file a timely notice of appeal.

B.  Knowing and Voluntary Plea

Nesbitt next claims that Carleton did not properly advise him about the impact of the Section 851, and that Carleton promised him a sentence of no more than 10 years.  Id. at 6.  Nesbitt further claims that Carleton should have objected to the sentence since it "plainly exceeded the sentence Petitioner was led to reasonably understand he would receive under the terms of the

19

written plea agreement . . . ."  (Paper 65-1 at 5).

Nesbitt's claims are in direct conflict with the record, including the transcript of the July 31, 2003 change of plea hearing.  First, the Court confirmed Nesbitt's understanding of his potential sentence after incorporation of the Section 851 filing.

> COURT: Do you understand the maximum penalty provided for by the offense, and that's a period of imprisonment of not less than 10 years nor more than life, a fine of not more than $4 million – it is $4 million?  Yes, $4 million. Up to life imprisonment.  At least eight years of supervised release, and up to life of supervised release.  Together with a $100 special assessment?
>
> NESBITT: Yes.

(Paper 74 at 8).  The Court also questioned Nesbitt about promises that may have led to his guilty plea.

> COURT: Have there been any other promises or representations made by anyone that's induced you to plead guilty today?
>
> NESBITT: No.
>
> COURT: Have you gone over the guidelines with Mr. Carleton?
>
> NESBITT: Yes.
>
> COURT: Has anyone made any promises or predictions as to what sentence you are likely to receive?
>
> NESBITT: No.

20

> COURT: Do you understand that any promises or
> predictions as to what sentence you are likely
> to receive are not binding on the Court.  Based
> upon your guilty plea, I could impose the
> maximum permitted by law and you would not have
> the right to withdraw your plea if those
> predictions proved to be inaccurate; do you
> understand that?
>
> NESBITT: Yes.

Id. at 13.  Statements at a plea allocution "carry a
strong presumption of verity."  Blackledge v. Allison,
431 U.S. 63, 74 (1977).  Furthermore, Nesbitt's claim
that he was persuaded by counsel's promise is
contradicted by the terms of his plea agreement addendum.
The addendum, signed by Nesbitt and counsel, provided:

> NESBITT fully understands that any estimates or
> predictions relative to the Guidelines
> calculations are not binding upon the Court.
> Thus, the defendant expressly acknowledges that
> in the event that any estimates or prediction by
> his attorney (or anyone else) are erroneous,
> those erroneous predictions will not provide
> grounds for withdrawal of his plea of guilty,
> modification of his sentence, or for appellate
> or post-conviction relief.

(Paper 65-4 at 4-5).

As the Court's colloquy demonstrates, Nesbitt was
aware of the potential for a sentence in excess of 10
years prior to entering his guilty plea.  Nesbitt also
acknowledged that no promises had been made, by Carleton

21

or others, to induce him into pleading guilty.  In his affidavit, Carleton explains that he and Nesbitt reviewed the addendum together, and that Nesbitt "understood he would receive a sentence of 216 months."  (Paper 76-1 at 1).  Consequently, Nesbitt's claims that he was not adequately advised about his potential sentence, and that he was misled by counsel's alleged promise, are without merit.[2]

C.  Failure To Object To Sentence

Finally, Nesbitt argues that Carleton should have objected the sentence imposed by the Court.  It is difficult to conceive, however, of such an objection given that the sentence was entirely consistent with the addendum to Nesbitt's plea agreement.  Indeed, the Court accepted the parties' terms, agreed to under Rule 11(c)(1)(C), and issued the exact 216-month sentence contemplated in the addendum.  Any claim that Carleton failed to object to application of the Section 851 enhancement is similarly meritless since, as discussed

[2]  Nesbitt's argument refers to 10 years being "the low end of the guideline range."  (Paper 68 at 3-4).  This argument confuses the guideline range with the statutory range.  Although Nesbitt might have harbored this same confusion prior to his plea and/or sentencing, the Court record, the Carleton affidavit and the plea agreements demonstrate that Nesbitt was fully aware of both the possible sentencing range and the value of any promises made prior to entering his plea.

above, that enhancement was withdrawn.

III.   Motion to Amend

     Nesbitt has moved to amend his motion to add claims
that (1) his plea was not knowing and voluntary and (2)
that the Court did not properly explain the impact of the
Section 851 enhancement on his sentence.  While the
motion to amend is GRANTED, these claims add nothing of
substance to Nesbitt's underlying § 2255 motion.  As
discussed previously, Nesbitt's sworn statements at the
plea allocution acknowledged his understanding of his
potential sentence after the Section 851 filing was
incorporated.  See United States v. Torres, 129 F.3d 710,
715 (2d Cir. 1997) ("A defendant's bald statements that
simply contradict what he said at his plea allocution are
not sufficient grounds to withdraw [a] guilty plea.").
Moreover, the Court explained to Nesbitt that any
promises made to him were not binding on the Court.
Therefore, based upon the record currently before the
Court, Nesbitt's claim that his plea was not knowing and
voluntary should be DENIED.[3]

_____

[3]  In his reply memorandum, Nesbitt also raises an objection to the
imposition of supervised release, arguing that supervised release was not
contemplated in his plea agreement.  That agreement, however, clearly
states that "other aspects of sentencing (i.e., fine and supervised
release) are within the sole discretion of the sentencing judge."  (Paper

<u>Conclusion</u>

For the reasons set forth above, Nesbitt's motion to amend his § 2255 filing (Paper 68) is GRANTED, and I recommend that his § 2255 motion for a writ of habeas corpus (Paper 65) be DENIED.

Dated at Burlington, in the District of Vermont, this 13th day of April, 2007.

<u>/s/ Jerome J. Niedermeier</u>
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

65-4 at 4).  Accordingly, Nesbitt's claim has no merit.